George Haines, Esq.
State Bar No. 9411
HAINES & KRIEGER, LLC
8985 S. Eastern Ave. Ste. 350
Las Vegas, NV 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
ghaines@hainesandkrieger.com
*Attorneys for Debtors*
ALFONSE D. CASTRONOVA and MONIKA E CASTRONOVA

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re: | Case No. 11-25472-ABL<br>Chapter 13 |
| ALFONSE D. CASTRONOVA and MONIKA E. CASTRONOVA**,** | Hearing Date: January 31, 2018<br>Hearing Time: 9:30am |
| **Debtor.** | |

**MOTION FOR SANCTIONS FOR VIOLATIONS OF FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1, DISALLOWANCE OF POST-PETITION CHARGES AND AWARD OF SANCTIONS UNDER RULE 3002.1(i) AND SANCTIONS UNDER SECTIONS 105 OF THE BANKRUPTCY CODE**

COMES NOW, Alfonse D. & Monika E.Castronova (the "Debtors" or "Plaintiffs"), by and through George Haines, Esq. of the law firm of HAINES & KRIEGER, LLC, and moves this Honorable Court for an Order awarding sanctions, punitive damages and attorney's fees.

## I. STATEMENT OF FACTS

1. On or about 9/30/2011, Debtor filed the instant bankruptcy, bearing docket number 11-25472 under Chapter 13 (the "Bankruptcy"). The Court can take judicial notice of this at **ECF No. 1**.

2. Debtors owned a residential property located at 8237 Antlers Pines Court, Las Vegas, NV 89149 ("the Property"), which was subject to a first mortgage lien held by Bank of America, N.A. ("BOA") when the Bankruptcy was filed.

3. On October 22, 2012, an Order Confirming Debtors' Chapter 13 Plan ("Confirmed Plan") was filed by this Court. **See ECF No.121.** Pursuant to Debtors' Confirmed Plan, Debtors were to cure pre-petition arrears in the amount of $12,086.00 and make on-going mortgage payments directly to BOA. **See Id.**

4. On February 12, 2014, PennyMac Loan Services, LLC ("PennyMac") filed a Transfer of Claim Other than for Security (the "Transfer"). **See ECF No. 165**. Subsequent to the Transfer, Chapter 13 Trustee Rick Yarnall began paying PennyMac pursuant to Bankruptcy Claim No. 20-2.

5. Trustee Rick Yarnall filed the Notice of Final Cure Payment ("Notice of Cure") on October 4, 2016 stating the PennyMac had been paid

$10,139.50 in pre-petition arrears and that Debtors had made their ongoing monthly mortgage payments after their Chapter 13 was filed. **See ECF No. 202**.

6. On October 24, 2016, PennyMac filed its response to the Notice of Cure agreeing that Debtors had cured their pre-petition arrears and were current on their post-petition mortgage payments. **See ECF No. 202**.

7. After completing the requirements under the Confirmation Order, the Court entered an order discharging Plaintiffs on February 7, 2017 (the "Discharge"). **See ECF No. 209**.

8. Plaintiffs then received correspondence from PennyMac dated October 11, 2017. (See correspondence from PennyMac dated October 11, 2017 attached hereto as Exhibit "1"). This correspondence contained the loan balances owed on the Property. (See Id.). The loan balances included property inspection fees in the amount of $212.00 and bankruptcy fees in the amount of $253.55. (See Id.).

9. Adding to the above debacle, PennyMac misreported considerable adverse credit information about the proper payment status on the account. For example, in Mr. Castronova's Equifax credit report dated March 14, 2017, PennyMac inaccurately reported past due balances from March 2015 through April 2016 during which time the Debtors were

maintaining all their monthly payments under the Chapter 13 plan eventually resulting in their discharge. Considering that PennyMac was paid according to the Chapter 13 Plan by the Chapter 13 Trustee it was simply inaccurate for PennyMac to report balances "past due" after the Chapter 13 filing and confirmation, since the Debtors fully performed all obligations owed to PennyMac after filing the Chapter 13.

10. Further compounding the baselessness of PennyMac's reporting (likely resulting from systemic payment misapplications), PennyMac admitted on October 14, 2016 that it "[a]gree[d] that the Debtor(s) has paid in full the amount required to cure the default on [PennyMac]'s claim…[and] [a]gree[d] that the [Debtors were] current with respect to *all* payments consistent with §1322(b)(5) of the Bankruptcy Code" which were required to be paid to PennyMac during the Chapter 13. (emphasis added) See *PHH's Response to Notice of Final Cure*, filed on October 24, 2016.

11. There was simply no basis for PennyMac to report the above late balances, since all payments were made as required to PennyMac during the Chapter 13, a fact it conceded on October 24, 2016; making it's derogatory reporting patently false and seriously misleading through its own judicially noticeable admissions.

12. Unsurprisingly, Mrs. Castronova's Equifax credit report suffered the same falsely furnished information by PennyMac. In her Equifax credit report dated March 14, 2017, PennyMac (similar to Mr. Castronova's report) inaccurately reported past due balances from March 2015 through April 2016.

13. Similar inaccuracies were also furnished to Experian by PennyMac (also likely resulting from the improperly applied payments) as seen below:



[Experian credit report excerpt prepared for MONIKA E CASTRONOVA, dated March 14, 2017, Report number 3385-7393-37, Page 5 of 14, showing PENNYMAC LOAN SERVICES L account details: PO BOX 514387, LOS ANGELES CA 90051, Phone (866) 545 9070, Date opened May 2009, First reported Feb 2014, Date of status Dec 2015, Type FHA Mortgage, Terms 30 Years, Monthly payment $1,494, Credit limit or original amount $223,870, Recent balance $191,297 as of Mar 2017, Recent payment $3,994, Responsibility Joint with ALFONSE D CASTRONOVA, Status Open. By Jun 2018, this account is scheduled to go to a positive status. Payment history grid and account history detail follow.]

14. Indeed, the Debtors' respective Experian reports each reflect twenty-two (22) adverse payment notations during which time PennyMac was being paid in conformance with the Debtors' post-Chapter 13 obligations under the confirmed plan. Each derogatory notation (44 altogether) constituted its own separate violation of the confirmed Chapter 13 plan.

15. The adverse reporting resulting from PennyMac's payment misapplications and overcharges has and continued to cause the Debtors to lose the entire benefit of the fresh start and damaging their credit despite their complete performance under the confirmed chapter 13 plan.

16. Accordingly, Plaintiffs requests that the Court sanction PennyMac for it illicit conduct.

## II.  LEGAL ARGUMENT

**A. FRPB 3002.1 Violations**

The Committee Note to Rule 3002.1(i) states:

*"If, after the chapter 13 debtor has completed payments under the plan and the case has been closed, the holder of a claim secured by the debtor's principal residence seeks to recover amounts that should have been but were not disclosed under this rule, the debtor may move to have the case reopened in order to seek sanctions against the holder of the claim under subdivision (i)."*

The Honorable Colleen A. Brown, United States Bankruptcy Judge, eloquently summarized the purpose and power of 3002.1 when she delivered her In re Gravel[1] decision:

> "Bankruptcy Rule 3002.1 (the "Rule") was promulgated in 2011, in response to a growing problem that had arisen in Chapter 13 cases throughout the country: debtors who had successfully completed their Chapter 13 plans, and paid all of their mortgage arrears and post-petition installment payments, would find themselves in renewed foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees — a result clearly at odds with a debtor's right to a fresh start. To promote further transparency and more emphatically safeguard debtors' fresh starts, the Rule requires the holder of a claim secured by a Chapter 13 debtor's principal residence to file a detailed notice setting forth all post-petition fees, expenses, and charges it seeks to recover from the debtor:

---

[1] In re Gravel, 556 B.R. 561 (2016).

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred. FED. R. BANKR. P. 3002.1(c)."

FED. R. BANKR. P. 3002.1 - Advisory Committee Note (2011) stresses the importance of the obligations mandated by this Rule that is underscored by the inclusion of a penalty for violations. When a party fails to comply with Rule 3002.1(c), Rule 3002.1(i) explicitly empowers a court to impose sanctions. It authorizes bankruptcy courts to preclude the mortgage creditor from presenting information it failed to disclose in accordance with the Rule, and to award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure. FED. R. BANKR. P. 3002.1(i). The corresponding Advisory Committee Note reinforces the court's authority to punish violations of the Rule, specifying sanctions may be imposed if the holder of a claim fails to provide any of the information required under subdivision (c). See FED. R. BANKR. P. 3002.1 Advisory Committee Note (2011).

In addition to this express authority to impose sanctions for Rule 3002.1(c) violations under Rule 3002.1(i), bankruptcy courts have broad

authority to impose sanctions under § 105 of the Bankruptcy Code. That statutory provision empowers courts to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code] ... [and to] sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a). See also Law v. Siegel, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014); Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 383, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007); In re Aquatic Dev. Grp., Inc., 352 F.3d 671, 680 (2d Cir.2003).

Subsection (1) of the Rule provides for the possible effects of the creditor's failure to provide the require information:

If the holder of a claim fails to provide for any information as required by subdivision (b), (c) or (g) of this rule, the court may, after notice and a hearing, take either or both of the following actions:

*(1) Preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that failure was substantially justified or is harmless: or*

*(2) Award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.*

Similar to the mortgagee's actions in *Gravel*, supra, PennyMac's failure to comply with Rule 3002.1(c) has prevented Debtors (who had successfully completed their Chapter 13 plans, and paid all of their mortgage arrears and post-petition installment payments) from obtaining their right to a fresh start. Instead, PennyMac has added property inspection and bankruptcy fees to the Debtors' mortgage loan resulting in a delinquency.

### B. VIOLATION OF THE CONIRMATION ORDER

On October 22, 2012, an Order Confirming Debtors' Chapter 13 Plan ("Confirmed Plan") was filed by this Court. See ECF No.121. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

The Debtors have complied with all of the requirements set forth in their Confirmed Plan. As set forth above, PennyMac reported

approximately forty-four (44) adverse payment notations during which time PennyMac was being paid in conformance with the Debtors' post-Chapter 13 obligations under the confirmed plan. Each derogatory notation constituted its own separate violation of the confirmed Chapter 13 plan.

The adverse reporting resulting from PennyMac's payment misapplications and overcharges has and continued to cause the Debtors to lose the entire benefit of the fresh start and damaging their credit despite their complete performance under the confirmed chapter 13 plan.

### C. VIOLATIONS OF SECTION 524(i) OF THE BANKRUPTCY CODE

Section 524(i) of the Bankruptcy Code states:

*"(i) The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan…shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debt."*

The actions of PennyMac in not properly crediting Debtors for post-petition payments, and demanding payment for illegal post-petition fees and expenses, has resulted in emotional distress and other trauma to the Debtors and they should be compensated for such emotional distress and trauma. Debtors have also been denied their "fresh start" for successfully completing

their Chapter 13 plan.

**D. FRPB 105 Sanctions**

The Second Circuit has repeatedly emphasized the importance of the bankruptcy court's equitable power and has instructed that § 105(a) should be construed liberally to enjoin [actions] that might impede the reorganization process. In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir.1994).

The Court should impose monetary sanctions against PennyMac under its inherent powers under 11 U.S.C. Section 105(a) as result of PennyMac's egregious conduct in this case.

### III. CONCLUSION

The evidence is clear and convincing: Defenant has violated FED. R. BANKR. P. 3002.1, the discharge injunction and confirmation order. PennyMac participated in the Bankruptcy. Rather than comply with this Court's Order pursuant to the Plan, and rather than comply with this Court's Order Discharging Debtor, PennyMac just couldn't help but try to enrich their bottom line.

As a result of its willful violations of the discharge injunction,

Defendant has caused Debtors significant emotional harm including anxiety, which in turn, led to financial damage and emotional distress damages that Debtors will establish at the evidentiary hearing. Accordingly, Debtor asks that this court award:

1. actual damages in the amount of $30,000;

2. non-punitive sanctions for Defendants' contempt in the amount of $5,000.00; and

3. attorney's fees and costs in an amount to be determined at the hearing on this matter.

Dated: December 29, 2017

/s/George Haines, Esq.
George Haines, Esq.
Attorney for Debtors